**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

FRIEDA ROSE C.,[1]

                    Plaintiff,

   v.

KILOLO KIJAKAZI,
Acting Commissioner of Soc. Sec. Admin.,

                 Defendant.       Case No. 3:20-cv-00235-SLG

## DECISION AND ORDER

On or about April 27, 2018,[2] Frieda Rose C. ("Plaintiff") protectively filed an application for disability insurance benefits ("SSDI") under Title II of the Social Security Act ("the Act").[3] In her application, Plaintiff alleged disability beginning September 12, 2015.[4] Plaintiff has exhausted her administrative remedies and filed a Complaint seeking

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Administrative Record ("A.R.") 210. The record appears to contain only the application summary, not the application itself.

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title II. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–.1599 (governing disability determinations under Title II), *with* 20 C.F.R. §§ 416.901–.999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] A.R. 210.

relief from this Court.[5]  Plaintiff's opening brief asks the Court to vacate and remand the agency's decision for the immediate calculation of benefits, or in the alternative, remand for further administrative proceedings.[6]  The Commissioner filed an Answer and a brief in opposition to Plaintiff's opening brief.[7]  Plaintiff filed a reply brief on May 19, 2021.[8]  Oral argument was not requested and was not necessary to the Court's decision.  On July 20, 2021, Defendant Commissioner Saul was substituted by Acting Commissioner Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d).[9]  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[10]  For the reasons set forth below, Plaintiff's request for relief is granted in part.

## I.      STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[11] "Substantial evidence" has been defined by the U.S. Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]

---

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 21 (Plaintiff's Br.).

[7] Docket 19 (Answer); Docket 22 (Defendant's Br.).

[8] Docket 23 (Reply).

[9] Docket Annotation (July 20, 2021).

[10] 42 U.S.C. § 405(g).

[11] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 2 of 31

Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[13]   In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[14]   If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[15]   A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[16]   An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[17]   Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[18]   In particular, the

---

U.S. 197, 229 (1938)).

[13] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[14] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[15] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[16] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[17] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[18] *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014).

Case 3:20-cv-00235-SLG   Document 25   Filed 11/18/21   Page 3 of 31

Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[19]

## II.    DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but are age 65 or older, blind, or disabled.[21]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

---

[19] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

[20] 42 U.S.C. § 423(a).

[21] *Id.* § 1381a.

[22] *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A).

[23] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 4 of 31

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[28] *The ALJ determined that Plaintiff had not engaged in substantial activity during the period from her alleged onset date of September 12, 2015 through her date last insured of December 31, 2019.[29]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work

---

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 12.

experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30] *The ALJ determined that Plaintiff had the following medically determinable severe impairments: pelvic fracture and osteoarthritis of the hands. The ALJ also determined that Plaintiff's tobacco use, bilateral cataracts, shoulder pain, ear infections, anemia, pelvic prolapse, and hepatitis C were non-severe.*[31]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[32] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.*[33]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[34]

---

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] A.R. 12.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 13.

[34] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work except that she was limited to occasionally climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasionally balancing; no stooping, kneeling, crouching, or crawling; frequently performing bilateral gross handling and fine manipulation; and avoiding all excessive vibration, unprotected heights, and hazardous machinery.[35]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[36] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was not capable of performing any past relevant work through the date last insured.[37]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[38] *The ALJ determined that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national*

---

[35] A.R. 14.

[36] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[37] A.R. 17.

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 7 of 31

*economy, including the positions of civil service clerk; admitting clerk; and appointment clerk.[39]*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 12, 2015, the alleged onset date, through December 31, 2019, the date last insured.[40]

## III.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1963 and was 56 years old on the date of her hearing.[41]  From 2007 to 2015, she reportedly worked for her husband at his locksmith business.  From 2004 through 2007, Plaintiff reportedly worked as a social service clerk.[42]  Plaintiff was seriously injured in a car accident on September 13, 2015.[43]  She received self-employment income from her husband's business from 2015 through 2017.[44]  This was not considered substantial gainful activity during the relevant period.[45]  On October 9, 2018, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[46]  Plaintiff appeared and testified with representation at a

---

[39] A.R. 18.

[40] A.R. 18.

[41] A.R. 210.

[42] A.R. 271–73, 310.

[43] A.R. 559.

[44] A.R. 240–44.

[45] A.R. 12.

[46] A.R. 75.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 8 of 31

hearing held on November 15, 2019 in Anchorage, Alaska before ALJ Cecilia LaCara.[47] On January 23, 2020, the ALJ issued an unfavorable ruling.[48] On August 3, 2020, the Appeals Council denied Plaintiff's request for review.[49] On September 29, 2020, Plaintiff appealed the Commissioner's final decision to this Court.[50]

## IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal. In her opening brief, Plaintiff alleges: (1) the RFC is unsupported by substantial evidence because the ALJ failed to properly weigh the opinions of Dr. Lebeau and Dr. Caldwell; (2) the ALJ's step five determination is not supported by substantial evidence "because the ALJ's findings and conclusions with respect to 'transferable skills' are contradicted by the Agency's own rulings and definitions"; and () the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.[51] The Commissioner argues the ALJ's decision is free from harmful legal error, supported by substantial evidence, and should be affirmed.[52] The Court will address Plaintiff's claims below.

---

[47] A.R. 46–53.

[48] A.R. 7–19.

[49] A.R. 1–5.

[50] Docket 1.

[51] Docket 21 at 13–21.

[52] Docket 22 at 4–13.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 9 of 31

A.  <u>Weighing of Medical Opinions</u>

Plaintiff applied for Title II benefits on or about April 27, 2018, so the new regulations apply to her claim.[53]  Under the new regulations, the definition of what constitutes a medical opinion has narrowed, focusing on what the claimant can do despite her impairments and what work-related limitations are present.[54]  The new regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)     Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)   Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)    Your ability to adapt to environmental conditions, such as temperature or fumes.[55]

---

[53] A.R. 210.

[54] *Compare* 20 C.F.R. § 404.1527, *with id.* § 404.1513(a)(2).

[55] 20 C.F.R. § 404.1513(a)(2).

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 10 of 31

The new regulations provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule.[56] Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[57] Supportability and consistency are considered the most important factors for evaluating persuasiveness.[58] Supportability and consistency are explained as follows in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[59]

---

[56] *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5867–68 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404, 416); 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[57] 20 C.F.R. § 404.1520c(c).

[58] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2) (for claims filed on or after March 27, 2017).

[59] *Id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

Generally, these are the only two factors the ALJ is required to address in her decision.[60] The ALJ must explain how she considered each of these two factors and support her reasons with substantial evidence.[61] In addition, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[62]

1. *Jack Lebeau, M.D.*

Plaintiff asserts that the ALJ erred in her consideration of Dr. Lebeau's testimony by misstating Dr. Lebeau's opinion. Specifically, Plaintiff maintains that Dr. Lebeau opined that Plaintiff could use her hands for gross and fine manipulation for no more than two hours total in an eight-hour workday, but the ALJ concluded that Dr. Lebeau had opined that Plaintiff was limited to that degree only as to fine manipulation, but could perform gross manipulation frequently.[63] Plaintiff contends that "the ALJ's failure to properly consider the contents of Dr. Labeau's opinion is harmful error, because the limitations he opined preclude Plaintiff's ability to perform the jobs identified at Step Five."[64] The

---

[60] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[61] *Id.* §§ 404.1520c, 416.920c.

[62] *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

[63] Docket 21 at 14–15; Docket 23 at 3.

[64] Docket 23 at 3.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 12 of 31

Commissioner responds that the ALJ correctly stated Dr. Lebeau's opinion that only limited Plaintiff to "fine work," such as "fine assembling," for up to two hours a day.[65]

At the hearing, Dr. Lebeau testified that Plaintiff's osteoarthritis, particularly of the hands, was a severe impairment.[66] Upon questioning by Plaintiff's attorney, the doctor specified that Plaintiff would be limited to "fine work, maybe, a total of two hours a day." Plaintiff's attorney sought clarification by then asking, "And when you say the fine work, is that just fingering, or is that handling and fingering?" Dr. Lebeau answered, "It's all that type of work." He added, "In other words, this could be fine assembling, where she would be putting parts together and so forth. She can't do that all day like some of the workers can." He later added, "And I think . . . that maybe a couple hours a day in stints would be possible, and not cause any further immediate problem."[67]

The ALJ determined that Plaintiff's osteoarthritis of the hands was a severe impairment.[68] The ALJ then stated that Dr. Lebeau had opined that Plaintiff "could frequently perform bilateral gross handling and fine manipulation." And the ALJ found this opinion persuasive "based upon [Dr. Lebeau's] review of the entirety of the medical evidence of record and over 40 years' experience."[69] The ALJ included this limitation in

---

[65] Docket 22 at 11.

[66] A.R. 39.

[67] A.R. 44–45.

[68] A.R. 12.

[69] A.R. 16.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 13 of 31

the RFC and the hypotheticals to the vocational expert.[70] Based on the ALJ's hypotheticals, the vocational expert testified that Plaintiff would be able to perform work as a civil service clerk, admitting clerk, and appointment clerk.[71] Later in the hearing, Plaintiff's attorney asked the vocational expert how a limitation of occasional handling and fingering instead of frequent handling and fingering would affect the jobs the expert listed. The vocational expert opined that "it might be an issue with the social-service clerk, probably more applicable to the appointment clerk or a duty clerk. Because again, you're doing the speaking by phone and just making minor data entry."[72]

The SSA defines "frequent" as "occurring from one-third to two-thirds of the time," meaning up to "a total of approximately 6 hours of an 8-hour workday," and "occasionally" as "occurring from very little up to one-third of the time," or a "total of no more than about 2 hours of an 8-hour workday."[73] As shown above, Dr. Lebeau's testimony indicates that Plaintiff would be limited to approximately two hours of "fine work" in a work day. His testimony, while not free of all ambiguity on this point, appears to include both handling (gross manipulation) and fingering (fine manipulation) as "fine work."[74] It appears that the ALJ incorrectly stated Dr. Lebeau's medical opinion regarding Plaintiff's osteoarthritis of the hands in stating that Plaintiff could "frequently perform bilateral gross handling and

---

[70] A.R. 14, 56–59.

[71] A.R. 56–59.

[72] A.R. 60.

[73] SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

[74] A.R. 44.

fine manipulation."[75]   Dr. Lebeau's opinion does not constitute substantial evidence that Plaintiff could frequently perform both gross handling and fine manipulation with her fingers.

The record supports limiting Plaintiff to only occasionally performing both handling and fingering.  For example, in June 2017, Plaintiff reported pain in her hands.  The provider noted that Plaintiff's hands were "[b]etter with movement up to a point, but if she does too much with her hands then they are swollen and stiff the next morning."  On examination, Plaintiff's DIP and PIP joints were mildly enlarged with mild tenderness and a normal range of motion.  X-rays of the hands and wrists showed mild degenerative changes of the interphalangeal joints.[76]  In September 2018, Michael Hansen, PA-C, saw Plaintiff for a consultative evaluation.  Based on his evaluation, PA Hansen noted that "[a]ctivities that require[] strength or manipulation of the hands are painful."  PA Hansen observed that although Plaintiff's motor strength was generally 5/5, she was "somewhat limited by pain in the hands."  He also observed that Plaintiff had tenderness along the joints of both hands, "particularly the DIP and PIP of her fingers."[77]  In December 2018, Plaintiff's medical provider observed osteoarthritic changes to Plaintiff's DIP and PIP joints bilaterally.[78]  In April 2019, Plaintiff presented for an acute visit with her physician

---

[75] A.R. 16.

[76] A.R. 458, 460–64.

[77] A.R. 500–02.

[78] A.R. 706.

for a flare-up of arthritis pain in her hands.[79]  Throughout the record, Plaintiff reported

hand, wrist, and finger pain.[80]  At multiple appointments, Plaintiff's physician refilled her

pain medications, including gabapentin,[81] meloxicam,[82] tramadol,[83] and other

analgesics.[84]

The Commissioner appears to argue that even if Dr. Lebeau's "fine work" limitation

applies to limit Plaintiff to only occasional fine manipulation, any error by the ALJ in this

regard is harmless because the DOT description of the appointment clerk position does

not include frequent fine manipulation.[85]  However, the DOT description of appointment

clerk includes handling (gross manipulation) "frequently" or "from 1/3 to 2/3 of the time"

and fingering (fine manipulation) "occasionally" or "up to 1/3 of the time."[86]  Since Dr.

Lebeau's definition of "fine work" appears to restrict Plaintiff to only occasional gross and

---

[79] A.R. 686.

[80] *E.g.*, A.R. 450, 460, 842.

[81] Gabapentin is used to relieve nerve pain in adults.  *See Gabapentin – Uses, Side Effects, and More*, WebMD, https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last visited Nov. 18, 2021).

[82] Meloxicam is used to treat arthritis by reducing pain, swelling, and stiffness of the joints.  *See Meloxicam – Uses, Side Effects, and More*, WebMD, https://www.webmd.com/drugs/2/drug-911/meloxicam-oral/details (last visited Nov. 18, 2021).

[83] Tramadol is used to treat moderate to moderately severe pain.  *See Tramadol HLC – Uses, Side Effects, and More*, WebMD, https://www.webmd.com/drugs/2/drug-4398-5239/tramadol-oral/tramadol-oral/details (last visited Nov. 18, 2021).

[84] *E.g.*, A.R. 428, 461, 706, 828, 842.

[85] Docket 22 at 11.

[86] DICOT 237.367-010, 1991 WL 672185.

fine manipulation, the ALJ's reliance on her misstatement of Dr. Lebeau's opinion was not harmless.[87]

In sum, there is not substantial evidence in the record to support the ALJ's conclusion that Plaintiff could frequently perform both gross and fine manipulation. Given the possibility that the ALJ would have formulated a different RFC for Plaintiff and provided different hypotheticals to the vocational expert had the ALJ not committed this error, the ALJ's error was not harmless and requires remand.

### 2. Jay Caldwell, M.D.

Plaintiff asserts that the ALJ "neither considered nor weighed" Dr. Caldwell's medical opinion. She alleges that this error is harmful because Dr. Caldwell's limitation of no more than occasional handling and fingering precludes the jobs listed by the vocational expert and identified at step five.[88] The Commissioner appears to contend that the ALJ's failure to discuss Dr. Caldwell's opinion was harmless because Dr. Caldwell also opined that Plaintiff was capable of light work, "which is more than sedentary work that the ALJ found Plaintiff could do."[89]

On September 29, 2018, Dr. Caldwell, an agency consultant, provided a physical residual functional capacity assessment.[90] Based on his review of the medical evidence,

---

[87] A.R. 44–45; *see also Regennitter v. Comm'n of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (ALJ's "inaccurate characterization of the evidence" warrants remand.).

[88] Docket 21 at 16.

[89] Docket 22 at 11.

[90] A.R. 509–16.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 17 of 31

Dr. Caldwell opined that due to osteoarthritis of the hands, Plaintiff was limited to only occasionally performing "hand grip/squeeze/twist actions." Dr. Caldwell further opined that Plaintiff was limited to occasionally pushing and pulling (including the operation of hand controls) with the upper extremities.[91] Additionally, Dr. Caldwell noted that Plaintiff's current x-rays read as normal, but "earlier . . . x-rays showed mild DIP [distal interphalangeal], PIP [proximal interphalangeal], and IP [interphalangeal] degenerative changes [of the hand], and they aren't going to go away."[92] The ALJ's decision did not contain any reference to Dr. Caldwell's medical opinions.[93]

Although the Commissioner points out that the new regulations apply to Plaintiff's claim, under those new regulations, the ALJ still has a duty to evaluate the persuasiveness of all medical opinions.[94] In this case, Dr. Caldwell's opinion regarding Plaintiff's osteoarthritis of the hands is consistent with Dr. Lebeau's testimony and other evidence of record as set forth above. The ALJ's failure to evaluate the persuasiveness of Dr. Caldwell's medical opinion is legal error.[95] Given the possibility that the ALJ would have formulated a different RFC for Plaintiff had she not committed this error, the ALJ's error was not harmless and requires remand.

---

[91] A.R. 512.

[92] A.R. 516.

[93] A.R. 10–19.

[94] Docket 22 at 7–11; 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").

[95] *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014).

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 18 of 31

### 3. Re-evaluation of the medical opinions

Plaintiff requests that the Court vacate the Commissioner's decision and remand for a directed finding of disability and calculation of benefits. But the Court finds that a remand for further agency proceedings to include a re-evaluation of the medical opinions is appropriate. On remand, the ALJ should clarify Dr. Lebeau's opinion by re-questioning Dr. Lebeau directly at a new hearing or by interrogatory. The ALJ should evaluate Dr. Caldwell's medical opinions by articulating the persuasiveness of the opinions in light of the medical evidence and their consistency with the other medical opinions of record. Based on a revised RFC, the ALJ should call a vocational expert to testify to jobs that may exist with a hypothetical that incorporates all of Plaintiff's limitations.

### B. Transferable Skills and Step Five

Plaintiff contends that the ALJ erred in finding that Plaintiff's skills gained from her past work would transfer to the three positions identified by the ALJ at step five in the disability analysis. She argues that the ALJ failed to properly apply the SSA's regulations and rulings for advanced age claimants.[96] The Commissioner claims that the ALJ properly relied on the vocational expert's testimony.[97]

At step five, the burden shifts to the Commissioner to establish that a claimant is capable of performing other work and that such work "exists in significant numbers in the national economy."[98] To determine whether a claimant can perform other work, the ALJ

---

[96] Docket 21 at 17–19.

[97] Docket 22 at 12.

[98] 20 C.F.R. §§ 404.1520(g), 404.1560(c)(2); *see also Tackett*, 180 F.3d at 1099 ("The burden of

must find that the claimant has "[s]kills that can be used in other work (transferability)."[99] A claimant's skills are considered transferable "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."[100]

The SSA recognizes that there are "special rules for persons of advanced age."[101] The regulations specify, "If [the claimant is] of advanced age (age 55 or older) and [the claimant has] a severe impairment(s) that limits [the claimant] to *sedentary work*, [the ALJ] will find that [the claimant has] skills that are transferable to other skilled or semiskilled sedentary work only if the sedentary work is so similar to [the claimant's] previous work that [the claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."[102]

In this case, Plaintiff was 56 as of the date of her hearing; therefore, she is a claimant of advanced age.[103] The vocational expert testified at Plaintiff's hearing that Plaintiff's past work included case aide; Dictionary of Occupational Titles ("DOT") #195.367-010, a light-duty, semi-skilled job with a specific vocational preparation ("SVP")

---

proof is on the claimant at steps one through four," but the burden shifts to the Commissioner at step five.).

[99] 20 C.F.R. § 404.1568(d).

[100] *Id.* § 404.1568(d)(1).

[101] *Id.* § 404.1563(e).

[102] *Id.* § 404.1568(d)(4); *see also* SSR 82-41, 1982 WL 31389 (Jan. 1, 1982).

[103] A.R. 27, 210; 20 C.F.R. § 404.1568(d)(4).

of 3; and salesclerk, DOT #279.267-054, a light-duty, semi-skilled job with an SVP of 3.[104] Based on the vocational expert's testimony, the ALJ determined that Plaintiff had acquired transferrable work skills from her past relevant work, including "knowledge of medical issues, scheduling, prioritizing and analyzing clients' need for care."[105]

Because the ALJ limited the first hypothetical to sedentary work, the vocational expert testified that Plaintiff would not be able to perform her past work.[106] Based on the vocational expert's testimony, the ALJ determined Plaintiff would be able to perform work as a civil service clerk, an admitting clerk, and an appointment clerk.[107]

In light of Plaintiff's age, the ALJ was required to consider the degree of vocational adjustment necessary to transfer the skills from Plaintiff's past work to the jobs listed by the vocational expert.[108] At the hearing on November 15, 2019, the ALJ asked the vocational expert, "Would the Claimant need to make any vocational adjustments in terms of tools, work processes, work settings, or the industry, in any of these jobs?" The vocational expert answered, "It would be in the medical and social service setting, so I

---

[104] A.R. 55.

[105] A.R. 17.

[106] A.R. 57.

[107] A.R. 18.

[108] 20 C.F.R. § 404.1568(d)(4); *see Renner v. Heckler*, 786 F.2d 1421, 1424 (9th Cir. 1986) ("[T]he ALJ must either make a finding of 'very little vocational adjustment' or otherwise acknowledge that a more stringent test is being applied which takes into consideration appellant's age.").

don't believe there would be."[109]  Although the ALJ asked the vocational expert whether Plaintiff needed any vocational adjustments, the record contains no explanation as to the similarity between the proposed new positions and Plaintiff's prior relevant work.[110]

Moreover, as pointed out by Plaintiff in her briefing, each of the jobs listed by the vocational expert appears to require some adjustment to new industries and work settings.[111]  Plaintiff's previous work as a social work case aide[112] and her job as a salesclerk with her husband's locksmith business[113] both required an SVP 3.[114]  Specific vocational preparation ("SVP") is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."[115]

---

[109] A.R. 58.

[110] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) ("Neither the ALJ's decision nor the VE's testimony addresses whether Bray — who was one month from turning 55 at the time of her hearing — would have to undergo more than minimal 'vocational adjustment' to perform successfully the tasks required of a file clerk, general clerk, or sales clerk, or otherwise determined whether the skills required [from her last job] are substantially similar to those required of a general, file, or sales clerk.").

[111] Docket 21 at 18.

[112] Although the vocational expert testified that Plaintiff's past work as a case aide required an SVP 2, the job actually requires an SVP 3.  A.R. 55.  *See* DICOT 195.367-010, 1991 WL 671595.

[113] DICOT 279.357-054, 1991 WL 672548.

[114] Counsel for Plaintiff argued at the hearing that Plaintiff would not be able to transfer to an SVP 4 job, but the ALJ did not directly address the issue at the hearing or in the decision.  A.R. 18, 62–63.

[115] *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 22 of 31

By contrast, the admitting clerk position, listed by the vocational expert at Plaintiff's hearing, requires an SVP 4.[116] A position requiring SVP 4 will take a typical worker "over 3 months up to and including 6 months" to learn the job.[117] The SSA regulations also state that transferable skills are most probable among jobs in which the same or a lesser degree of skill is required.[118] Given the "special rules" to be applied to Plaintiff, the record does not support the ALJ's unexplained conclusion that Plaintiff could perform a new job requiring a higher degree of skill than her past work and requiring three to six months to learn with "minimal vocational adjustment."[119] Moreover, the admitting clerk job requires frequent fingering and handling.[120]

---

[116] The full job description of admitting clerk is as follows:

> Interviews incoming patient or representative and enters information required for admission into computer: Interviews patient or representative to obtain and record name, address, age, religion, persons to notify in case of emergency, attending physician, and individual or insurance company responsible for payment of bill. Explains hospital regulations, such as visiting hours, payment of accounts, and schedule of charges. Escorts patient or arranges for escort to assigned room or ward. Enters patient admitting information into computer and routes printed copy to designated department. Obtains signed statement from patient to protect hospital's interests. May assign patient to room or ward. May compile data for occupancy and census records. May store patient's valuables. May receive payments on account.

DICOT 205.362-018, 1991 WL 671710.

[117] *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702.

[118] 20 C.F.R. § 404.1568(d)(2).

[119] *Id.* § 404.1568(d)(4); *see also* SSR 82-41, 1982 WL 31389 (Jan. 1, 1982).

[120] DICOT 205.362-018, 1991 WL 671710.

The same is true for the two other jobs listed by the ALJ at step five. The civil service clerk position requires an SVP 3, which is an equal skill level to Plaintiff's previous work.[121] However, the job requires frequent handling and fingering.[122] And, the appointment clerk position requires SVP 3, frequent handling, and occasional fingering.[123]

In this case, the ALJ erred by failing to ask the vocational expert about the similarities and differences between Plaintiff's prior relevant work and the three proposed positions. The ALJ also erred in not addressing the vocational adjustment necessary for

---

[121] The full job description of the civil service clerk (DOT #205.362-010) is as follows:

> Keeps records of selection and assignment of personnel in office that recruits workers from civil service register: Mails announcements of examinations and blank application forms in response to requests. Performs reception duties and answers questions about examinations, eligibility, salaries, benefits, and other pertinent information. Issues application forms to applicants at counter. Reviews applications for completeness, accuracy, and eligibility requirements. Files application forms, test papers, and records. Reviews examination ratings and places names of eligibles on register. Refers names from register to agency head and notifies eligible applicants of appointment. Posts results of interviews on file cards. Requests references from present or past employers concerning applicants. Types reports and forms. May keep records, such as group life insurance and retirement payments. May administer civil service examinations to applicants.

DICOT 205.362-010, 1991 WL 671708.

[122] DICOT 205.362-010, 1991 WL 671708.

[123] The full job description of appointment clerk (DOT #237.367-010) is as follows:

> Schedules appointments with employer or other employees for clients or customers by mail, phone, or in person, and records time and date of appointment in appointment book. Indicates in appointment book when appointments have been filled or cancelled. May telephone or write clients to remind them of appointments. May receive payments for services, and record them in ledger. May receive callers [RECEPTIONIST (clerical)].

DICOT 237.367-010, 1991 WL 672185.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 24 of 31

each of these positions and by failing to include such explanation in the decision. Moreover, given the ALJ's failure to adequately evaluate Dr. Lebeau's and Dr. Caldwell's medical opinions regarding Plaintiff's ability to perform frequent gross and fine manipulation, there is not substantial evidence in the record to support the ALJ's conclusion that Plaintiff had the RFC and transferable job skills to perform the admitting clerk, civil service clerk, or appointment clerk jobs.

## C. Symptom Testimony

Plaintiff alleges that the ALJ failed to provide clear and convincing reasons for discounting her subjective complaints, specifically her testimony and reports of pain.[124] The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective testimony. The Commissioner contends that the ALJ presented clear and convincing reasons—specifically, that Plaintiff's symptoms were controlled by medication and Plaintiff's testimony was inconsistent with the evidence.[125]

An ALJ's assessment of a claimant's symptoms has two steps.[126] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[127] In the first step, the claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she

---

[124] Docket 21 at 20–21.

[125] Docket 22 at 4–5.

[126] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

[127] *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).

Case 3:20-cv-00235-SLG   Document 25   Filed 11/18/21   Page 25 of 31

need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[128]   Here, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described.[129]

Second, if the claimant has satisfied step one and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms.[130] This standard is "the most demanding required in Social Security cases."[131]   Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.[132]  To make this finding, the ALJ was required to provide specific, clear and convincing reasons for discounting Plaintiff's symptom testimony.[133]

Plaintiff testified that she had problems with arthritis in her hands, ankles, knee, hip, and back.  She indicated that she had trouble concentrating, remembering, and word finding.  Plaintiff testified that her prescriptions of tramadol and gabapentin were working

---

[128] *Id.*

[129] A.R. 14.

[130] *Trevizo*, 871 F.3d at 678.

[131] *Id.*

[132] A.R. 14–15.

[133] *Trevizo*, 871 F.3d at 679 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007)).

"[f]or now" and helped with the pain in her pelvis, back, and knee. Plaintiff also testified that if she did not take gabapentin, her nerves flared from her pelvis to her feet and up to her jaw. She reported needing to frequently change positions. Plaintiff testified, "I'm always thinking about . . . the pain that I'm in throughout the whole day."[134]

Here, the ALJ found that Plaintiff's testimony "was not persuasive in indicating any need for additional functional limitations; she is already reduced to the sedentary level due to her pelvic pain, which she has stated, on multiple occasions, was adequately controlled with medications." The effectiveness of medication and improvement with treatment are factors an ALJ may consider in evaluating the intensity and persistence of a claimant's symptoms.[135] But an ALJ "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"[136]

There were a few reports in the record of pain medications working well.[137] However, the Court's review of the treatment records reveals that overall, Plaintiff reported a constant level of pain, with the intermittent worsening of that pain controlled by medications.[138] The treatment records show Plaintiff consulted a counselor for pain

---

[134] A.R. 47–52.

[135] 20 C.F.R. § 404.1529 (c)(3); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

[136] *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks and citations omitted).

[137] *E.g.*, A.R. 688.

[138] *E.g.*, A.R. 365, 427, 434–35, 500, 686, 705, 795, 814, 824, 828–29, 834, 842, 852, 864, 869, 876.

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 27 of 31

symptoms.[139]  At physical therapy visits in December 2018 and January 2019, Plaintiff reported persistent pain in the groin, low back, and tailbone since her motor vehicle accident in 2015.  The goal of her physical therapy sessions was to "tolerate sitting upright in a chair with normal posture."[140]  She also reported being unable to participate in subsistence activities because of pain.[141]  In this case, the ALJ's determination that Plaintiff's pain was controlled with medication is not supported by substantial evidence in the record and does not constitute a clear and convincing reason for discounting Plaintiff's pain testimony.

As to her hands, Plaintiff testified that she had arthritis in her hands.  She testified that the joints in her hands felt "like somebody [was] putting a hot pan on them" and they burned.  She testified that her hand joints were "getting disfigured" so she would "drop things, like heavier things, a water bottle[], and I have to have help to pick them up."[142]  The ALJ discounted Plaintiff's testimony regarding her hands, finding it was inconsistent with the objective evidence—specifically, imaging indicating the lack of degenerative changes in the left hand.[143]  The ALJ stated, "As to [Plaintiff's] hands, multiple exams

---

[139] A.R. 779.

[140] A.R. 696, 698–99, 701, 703–04, 787–88, 792–93, 797–98, 801–03, 814–17.

[141] A.R. 826.

[142] A.R. 48.

[143] A.R. 16, 504.

indicated normal strength and no loss of sensation; imaging did not show degenerative changes."[144]

An ALJ "may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."[145]   However, objective medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects.[146]   But here,  the ALJ's reasoning is not clear and convincing.   Contrary to the ALJ's statement that imaging did not show degenerative changes,  there  is  imaging  from  2017  showing  mild  degenerative  changes  of  the interphalangeal joints.[147]  As pointed out by Dr. Caldwell, although later imaging did not show  degenerative  changes  of  the  hand,  the  degenerative  changes  shown  in  2017, "aren't going to go away."[148]   Moreover, given the ALJ's misstatement of Dr. Lebeau's testimony  regarding  Plaintiff's  hands,  concurring  medical  opinions  in  the  record  that Plaintiff would be limited to occasional handling and fingering, ample support for only occasional  bilateral  handling  and  fingering  in  treatment  notes,  and  Plaintiff's  own

---

[144] A.R. 16.

[145] *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

[146] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (noting that although it is a factor in the ALJ's analysis of a claimant's subjective complaints, lack of medical evidence cannot form the sole basis for discounting pain testimony.).

[147] A.R. 458.

[148] A.R. 516.

Case 3:20-cv-00235-SLG   Document 25   Filed 11/18/21   Page 29 of 31

testimony that she experienced burning pain in her hands and her hand joints were disfigured from arthritis, the second imaging study is not a clear and convincing reason to discount Plaintiff's hand symptom testimony.

In sum, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. On remand, the ALJ will reconsider Plaintiff's symptom testimony.

D.  Scope of Remand

Plaintiff asks the Court to vacate the final agency decision and remand to the Commissioner for "a directed finding of disability and calculation of benefits based upon the uncontroverted opinion evidence," or in the alternative, remand for further administrative proceedings.[149] The "ordinary remand rule" applies to disability cases. Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[150] In this case, the proper remedy is reversal and remand for further administrative proceedings and the issuance of a new decision with appropriate findings at each step of the sequential evaluation.

The ALJ shall discuss the supportability and consistency of Dr. Lebeau's and Dr. Caldwell's opinions under the new regulations. The ALJ should clarify Dr. Lebeau's

---

[149] Docket 21 at 21.

[150] *Treichler*, 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 30 of 31

opinion on "fine work" by re-questioning Dr. Lebeau directly at a new hearing or by interrogatory.[151]  The ALJ should evaluate Dr. Caldwell's medical opinion by articulating the persuasiveness of Dr. Caldwell's opinion in light of the medical evidence and consistency with the other medical opinions of record.  The ALJ should reevaluate Plaintiff's pain testimony.  Based on all of this, the ALJ will reevaluate the RFC and proceed to step five as necessary.  If the ALJ reaches step five, the ALJ should meaningfully consider the degree of vocational adjustment necessary to transfer the skills from Plaintiff's past work to the jobs listed by the vocational expert.

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence in the record.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 21 is GRANTED, the Commissioner's motion at Docket 22 is DENIED, and this matter is REMANDED for further proceedings consistent with this order.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 18th day of November, 2021 at Anchorage, Alaska.


*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[151] *Regennitter*, 166 F.3d at 1297 (holding "inaccurate characterization of the evidence" warrants remand).

Case No. 3:20-cv-00235-SLG
Decision and Order
Page 31 of 31